# EXHIBIT B



**Address**: 62 Britton Street, London, EC1M 5UY, Great Britain
**Phone**: +44 (0) 20 3422 4321
**Website**: www.privacyinternational.org

December 13, 2016

**VIA FACSIMILE AND POST**

National Security Agency
ATTN: FOIA Office
9800 Savage Road, Suite 6932
Ft. George G. Meade, MD  20755-6932
United States of America

**Re: Request Under Freedom of Information Act**

To whom it may concern,

Privacy International ("PI") submits this request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for access to records relating to the British-United States Communication Intelligence Agreement (now known as the "UKUSA Agreement"). Specifically, we request the following records[1]:

1.  Any records governing, amending, extending or appended to the UKUSA Agreement.

2.  Any records relating to the implementation of the UKUSA Agreement by the United States government, including, but not limited to:

    a.  Regulations, policies, memoranda, legal opinions, strategy documents, directives, definitions, and technical manuals or specifications;

    b.  Records pertaining to planning, technical and other relevant conferences, including, but not limited to, minutes, reports and recommendations.

3.  Any records construing or interpreting the authority of the National Security Agency ("NSA") pursuant to the UKUSA Agreement; any regulations, policies or other implementing documents issued thereunder; or any other relevant authorities pertaining to the UKUSA Agreement.

---

[1] Records include, but are not limited to, letters, reports, memoranda, legal opinions, policy statements, notes, technical manuals, technical specifications, tape recordings, electronic records (including email, data, and computer source and object code), and any other materials.

4. Any records describing the standards that must be satisfied for the "exchange" of "products" of "operations relating to foreign communications," as the NSA defines these terms, pursuant to the NSA's authority under the UKUSA Agreement; any regulations, policies or other implementing documents issued thereunder; or any other relevant authorities governing the "exchange" of intelligence "products" under the UKUSA Agreement.[2]

5. Any records describing the minimization procedures used by the NSA with regard to the "exchange" of "products" of "operations relating to foreign communications," as the NSA defines these terms, pursuant to the NSA's authority under the UKUSA Agreement; any regulations, policies or other implementing documents issued thereunder; or any other relevant authorities governing the "exchange" of intelligence "products" under the UKUSA Agreement.[3]

6. Any other records governing the exchange of intelligence between the United States government and the governments of the United Kingdom, Canada, Australia and/or New Zealand.

**Request for a Public Interest Fee Waiver**

PI requests a waiver of search, review and duplication fees on the ground that disclosure of the requested records is in the public interest because it: (1) "is likely to contribute significantly to public understanding of the operations or activities of the government," and (2) "is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). This request clearly satisfies both criteria.

First, the requested records concern "the operations or activities of the government." The 1955 version of the UKUSA Agreement provides that "[t]he agreement governs the

---

[2] The 1955 version of the UKUSA Agreement, which is the most recent publicly available version of the agreement and was declassified by the NSA in 2010, lists the following "products": "collection of traffic," "acquisition of communications documents and equipment," "traffic analysis," "cryptanalysis," "decryption and translation," and "acquisition of information regarding communications organizations, procedures, practices and equipment." U.K.-U.S. Communications Intelligence Agreement (UKUSA Agreement), May 10, 1955, § 4(a), available at https://www.nsa.gov/news-features/declassified-documents/ukusa/assets/files/new_ukusa_agree_10may55.pdf [hereinafter UKUSA Agreement]. PI requests any records describing the standards that must be satisfied for the "exchange" of "products" including, but not limited to, those contained in the preceding list.
[3] Minimization procedures include, but are not limited to, regulations, policies, procedures or rules addressing the acquisition, processing, retention, dissemination, and destruction of information relating to United States persons that is acquired during the course of intelligence activities.

relations" between the United States and the United Kingdom "in communications intelligence."[4] UKUSA Agreement, § 2. It further provides that:

> The parties agree to the exchange of the products of the following operations relating to foreign communications:-
>
> (1) Collection of traffic.
> (2) Acquisition of communications documents and equipment.
> (3) Traffic analysis.
> (4) Cryptanalysis.
> (5) Decryption and translation.
> (6) Acquisition of information regarding communications organizations, procedures, practices and equipment.

*Id*. at § 4(a). The UKUSA Agreement therefore documents the United States government's agreement with the British (as well as Canadian, Australian and New Zealand) governments to exchange intelligence.

The requested records will also "contribute significantly to the public understanding of the operations or activities of the government." 5 U.S.C. § 552(a)(4)(A)(iii). The government's surveillance powers, capabilities, and activities, including as they pertain to foreign intelligence, are matters of great public interest and concern. Very little information on the government's agreement to exchange intelligence with the British, Canadian, Australian, and New Zealand governments, including the legal basis and scope of that power, currently exists in the public domain. A clearer understanding of this agreement and whether it appropriately accommodates the constitutional rights of American citizens and residents whose communications and/or data are implicated in the course of that exchange, matter significantly to the public.

Second, PI does not have a commercial interest in the disclosure of the requested records. PI is a registered charity in the United Kingdom that seeks to advance the right to privacy throughout the world. Dissemination of information about government activities, particularly with respect to surveillance, is a critical and substantial component of PI's mission and work. PI does not seek to commercially benefit from these activities. Any information obtained through this request will be disseminated to the public at no cost for the purpose of educating the public and promoting the protection of civil liberties and human rights.

---

[4] Appendix J to the 1955 version of the UKUSA Agreement further provides that "Canada, Australia and New Zealand will be regarded as UKUSA-collaborating Commonwealth countries." Principles of UKUSA Collaboration with Commonwealth Countries other than the U.K., Appendix J, UKUSA Agreement.

**Request for a Waiver of Search and Review Fees**

In the alternative, PI requests a waiver of search and review fees on the ground that the requested records are not sought for commercial use and because PI is a "representative of the news media." 5 U.S.C. § 552(a)(4)(A)(ii)(II). As discussed above, PI does not seek the requested records for commercial use.

PI further qualifies as a representative of the news media because it "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii); *see also* Nat'l Sec. Archive v. Dep't of Def., 880 F.2d 1381, 1387 (D.C. Cir. 1989). PI conducts research on a variety of issues related to privacy and surveillance. It then publishes its research in a variety of formats, including research reports,[5] policy papers,[6] and frequent blog posts.[7] This information is freely available via PI's website.

For the reasons above, we respectfully request that all fees related to the search, review, and duplication of the requested records be waived. If these fees will not be waived, we ask that you contact us at the email address listed below should the estimated fees resulting from this request exceed $100.

\*\*\*

We request that responsive electronic records be provided electronically in their native file format, if possible. See 5 U.S.C. § 552(a)(3)(B). Alternatively, we request that the records be provided electronically in text-searchable PDF, in the best image quality in the NSA's possession, and in separate, Bates-stamped files.

We further request that you provide an estimated date on which you will finish processing this request. See 5 U.S.C. § 552(a)(7)(B).

If this FOIA request is denied in whole or in part, please provide the reasons for the denial, pursuant to 5 U.S.C. § 552(a)(6)(A)(i). In addition, please release all segregable portions of otherwise exempt material in accordance with 5 U.S.C. § 552(b). Furthermore, if any documents responsive to this request are classified, please identify those documents, including a date and document number where possible, so we may begin the process of

---

[5] *See, e.g.*, Edin Omanovic, Privacy International, *The Global Surveillance Industry*, July 2016, https://privacyinternational.org/sites/default/files/global_surveillance.pdf.

[6] *See, e.g.*, Privacy International, *Submission to the UN Special Rapporteur on the Promotion and Protection of the Right to Freedom of Opinion and Expression: Study on Telecommunications and Internet Access Sector*, Nov. 2016, https://www.privacyinternational.org/sites/default/files/UN%20SR%20FOE%20Study%20on %20ICT%20Sector%20submission.pdf.

[7] *See, e.g.*, Eva Blum-Dumontet, *Friends, Followers, Police Officers, and Enemies: Social Surveillance in Thailand*, Sept. 20, 2016, https://www.privacyinternational.org/node/935.

requesting a Mandatory Declassification Review under the terms of Executive Order 13,526 (2010).

Thank you for your consideration of this request. If you have any questions or concerns, please do not hesitate to contact us at the email address listed below. Pursuant to 5 U.S.C. § 552(a)(6)(A)(i), we expect a response regarding this request within the twenty working-day statutory time limit.

Sincerely,

Scarlet Kim
Legal Officer
Privacy International

Phone: +44 (0) 20 3422 4321
Email: scarlet@privacyinternational.org



**Address**: 62 Britton Street, London, EC1M 5UY, Great Britain
**Phone**: +44 (0) 20 3422 4321
**Website**: www.privacyinternational.org

December 13, 2016

**VIA E-MAIL AND POST**

Jennifer L. Hudson
Director, Information Management Division
Office of the Director of National Intelligence
Washington, D.C. 20511
United States of America

**Re: Request Under Freedom of Information Act**

To whom it may concern,

Privacy International ("PI") submits this request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for access to records relating to the British-United States Communication Intelligence Agreement (now known as the "UKUSA Agreement"). Specifically, we request the following records[1]:

1. Any records governing, amending, extending or appended to the UKUSA Agreement.

2. Any records relating to the implementation of the UKUSA Agreement by the United States government, including, but not limited to:

   a. Regulations, policies, memoranda, legal opinions, strategy documents, directives, definitions, and technical manuals or specifications;

   b. Records pertaining to planning, technical and other relevant conferences, including, but not limited to, minutes, reports and recommendations.

3. Any records construing or interpreting the authority of the Office of the Director of National Intelligence ("ODNI") pursuant to the UKUSA Agreement; any regulations, policies or other implementing documents issued thereunder; or any other relevant authorities pertaining to the UKUSA Agreement.

---

[1] Records include, but are not limited to, letters, reports, memoranda, legal opinions, policy statements, notes, technical manuals, technical specifications, tape recordings, electronic records (including email, data, and computer source and object code), and any other materials.

4. Any records describing the standards that must be satisfied for the "exchange" of "products" of "operations relating to foreign communications," as ODNI defines these terms, pursuant to ODNI's authority under the UKUSA Agreement; any regulations, policies or other implementing documents issued thereunder; or any other relevant authorities  governing the "exchange" of intelligence "products" under the UKUSA Agreement.[2]

5. Any records describing the minimization procedures used by ODNI with regard to the "exchange" of "products" of "operations relating to foreign communications," as ODNI defines these terms, pursuant to ODNI's authority under the UKUSA Agreement; any regulations, policies or other implementing documents issued thereunder; or any other relevant authorities governing the "exchange" of intelligence "products" under the UKUSA Agreement.[3]

6. Any other records governing the exchange of intelligence between the United States government and the governments of the United Kingdom, Canada, Australia and/or New Zealand.

**Request for a Public Interest Fee Waiver**

PI requests a waiver of search, review and duplication fees on the ground that disclosure of the requested records is in the public interest because it: (1) "is likely to contribute significantly to public understanding of the operations or activities of the government," and (2) "is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). This request clearly satisfies both criteria.

First, the requested records concern "the operations or activities of the government." The 1955 version of the UKUSA Agreement provides that "[t]he agreement governs the

---

[2] The 1955 version of the UKUSA Agreement, which is the most recent publicly available version of the agreement and was declassified by the NSA in 2010, lists the following "products": "collection of traffic," "acquisition of communications documents and equipment," "traffic analysis," "cryptanalysis," "decryption and translation," and "acquisition of information regarding communications organizations, procedures, practices and equipment." U.K.-U.S. Communications Intelligence Agreement (UKUSA Agreement), May 10, 1955, § 4(a), available at https://www.nsa.gov/news-features/declassified-documents/ukusa/assets/files/new_ukusa_agree_10may55.pdf [hereinafter UKUSA Agreement]. PI requests any records describing the standards that must be satisfied for the "exchange" of "products" including, but not limited to, those contained in the preceding list.
[3] Minimization procedures include, but are not limited to, regulations, policies, procedures or rules addressing the acquisition, processing, retention, dissemination, and destruction of information relating to United States persons that is acquired during the course of intelligence activities.

relations" between the United States and the United Kingdom "in communications intelligence."[4] UKUSA Agreement, § 2. It further provides that:

> The parties agree to the exchange of the products of the following operations relating to foreign communications:-
>
> (1) Collection of traffic.
> (2) Acquisition of communications documents and equipment.
> (3) Traffic analysis.
> (4) Cryptanalysis.
> (5) Decryption and translation.
> (6) Acquisition of information regarding communications organizations, procedures, practices and equipment.

*Id*. at § 4(a). The UKUSA Agreement therefore documents the United States government's agreement with the British (as well as Canadian, Australian and New Zealand) governments to exchange intelligence.

The requested records will also "contribute significantly to the public understanding of the operations or activities of the government." 5 U.S.C. § 552(a)(4)(A)(iii). The government's surveillance powers, capabilities, and activities, including as they pertain to foreign intelligence, are matters of great public interest and concern. Very little information on the government's agreement to exchange intelligence with the British, Canadian, Australian, and New Zealand governments, including the legal basis and scope of that power, currently exists in the public domain. A clearer understanding of this agreement and whether it appropriately accommodates the constitutional rights of American citizens and residents whose communications and/or data are implicated in the course of that exchange, matter significantly to the public.

Second, PI does not have a commercial interest in the disclosure of the requested records. PI is a registered charity in the United Kingdom that seeks to advance the right to privacy throughout the world. Dissemination of information about government activities, particularly with respect to surveillance, is a critical and substantial component of PI's mission and work. PI does not seek to commercially benefit from these activities. Any information obtained through this request will be disseminated to the public at no cost for the purpose of educating the public and promoting the protection of civil liberties and human rights.

---

[4] Appendix J to the 1955 version of the UKUSA Agreement further provides that "Canada, Australia and New Zealand will be regarded as UKUSA-collaborating Commonwealth countries." Principles of UKUSA Collaboration with Commonwealth Countries other than the U.K., Appendix J, UKUSA Agreement.

**Request for a Waiver of Search and Review Fees**

In the alternative, PI requests a waiver of search and review fees on the ground that the requested records are not sought for commercial use and because PI is a "representative of the news media." 5 U.S.C. § 552(a)(4)(A)(ii)(II). As discussed above, PI does not seek the requested records for commercial use.

PI further qualifies as a representative of the news media because it "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii); *see also* Nat'l Sec. Archive v. Dep't of Def., 880 F.2d 1381, 1387 (D.C. Cir. 1989). PI conducts research on a variety of issues related to privacy and surveillance. It then publishes its research in a variety of formats, including research reports,[5] policy papers,[6] and frequent blog posts.[7] This information is freely available via PI's website.

For the reasons above, we respectfully request that all fees related to the search, review, and duplication of the requested records be waived. If these fees will not be waived, we ask that you contact us at the email address listed below should the estimated fees resulting from this request exceed $100.

\*\*\*

We request that responsive electronic records be provided electronically in their native file format, if possible. See 5 U.S.C. § 552(a)(3)(B). Alternatively, we request that the records be provided electronically in text-searchable PDF, in the best image quality in ODNI's possession, and in separate, Bates-stamped files.

We further request that you provide an estimated date on which you will finish processing this request. See 5 U.S.C. § 552(a)(7)(B).

If this FOIA request is denied in whole or in part, please provide the reasons for the denial, pursuant to 5 U.S.C. § 552(a)(6)(A)(i). In addition, please release all segregable portions of otherwise exempt material in accordance with 5 U.S.C. § 552(b). Furthermore, if any documents responsive to this request are classified, please identify those documents, including a date and document number where possible, so we may begin the process of

---

[5] *See, e.g.*, Edin Omanovic, Privacy International, *The Global Surveillance Industry*, July 2016, https://privacyinternational.org/sites/default/files/global_surveillance.pdf.
[6] *See, e.g.*, Privacy International, *Submission to the UN Special Rapporteur on the Promotion and Protection of the Right to Freedom of Opinion and Expression: Study on Telecommunications and Internet Access Sector*, Nov. 2016, https://www.privacyinternational.org/sites/default/files/UN%20SR%20FOE%20Study%20on %20ICT%20Sector%20submission.pdf.
[7] *See, e.g.*, Eva Blum-Dumontet, *Friends, Followers, Police Officers, and Enemies: Social Surveillance in Thailand*, Sept. 20, 2016, https://www.privacyinternational.org/node/935.

requesting a Mandatory Declassification Review under the terms of Executive Order 13,526 (2010).

Thank you for your consideration of this request. If you have any questions or concerns, please do not hesitate to contact us at the email address listed below. Pursuant to 5 U.S.C. § 552(a)(6)(A)(i), we expect a response regarding this request within the twenty working-day statutory time limit.

Sincerely,

Scarlet Kim
Legal Officer
Privacy International

Phone: +44 (0) 20 3422 4321
Email: scarlet@privacyinternational.org



**Address**: 62 Britton Street, London, EC1M 5UY, Great Britain
**Phone**: +44 (0) 20 3422 4321
**Website**: www.privacyinternational.org

December 13, 2016

**VIA FACSIMILE AND POST**

Office of Information Programs and Services
A/GIS/IPS/RL
United States Department of State
Washington, D.C. 20522-8100
United States of America

**Re: Request Under Freedom of Information Act**

To whom it may concern,

Privacy International ("PI") submits this request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for access to records relating to the British-United States Communication Intelligence Agreement (now known as the "UKUSA Agreement"). Specifically, we request the following records[1]:

1. Any records governing, amending, extending or appended to the UKUSA Agreement.

2. Any records relating to the implementation of the UKUSA Agreement by the United States government, including, but not limited to:

   a. Regulations, policies, memoranda, legal opinions, strategy documents, directives, definitions, and technical manuals or specifications;

   b. Records pertaining to planning, technical and other relevant conferences, including, but not limited to, minutes, reports and recommendations.

3. Any records construing or interpreting the authority of the United States Department of State ("State Department") pursuant to the UKUSA Agreement; any regulations, policies or other implementing documents issued thereunder; or any other relevant authorities pertaining to the UKUSA Agreement.

---

[1] Records include, but are not limited to, letters, reports, memoranda, legal opinions, policy statements, notes, technical manuals, technical specifications, tape recordings, electronic records (including email, data, and computer source and object code), and any other materials.

4. Any records describing the standards that must be satisfied for the "exchange" of "products" of "operations relating to foreign communications," as the State Department defines these terms, pursuant to the State Department's authority under the UKUSA Agreement; any regulations, policies or other implementing documents issued thereunder; or any other relevant authorities governing the "exchange" of intelligence "products" under the UKUSA Agreement.[2]

5. Any records describing the minimization procedures used by the State Department with regard to the "exchange" of "products" of "operations relating to foreign communications," as the State Department defines these terms, pursuant to the State Department's authority under the UKUSA Agreement; any regulations, policies or other implementing documents issued thereunder; or any other relevant authorities governing the "exchange" of intelligence "products" under the UKUSA Agreement.[3]

6. Any other records governing the exchange of intelligence between the United States government and the governments of the United Kingdom, Canada, Australia and/or New Zealand.

**Request for a Public Interest Fee Waiver**

PI requests a waiver of search, review and duplication fees on the ground that disclosure of the requested records is in the public interest because it: (1) "is likely to contribute significantly to public understanding of the operations or activities of the government," and (2) "is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). This request clearly satisfies both criteria.

First, the requested records concern "the operations or activities of the government." The 1955 version of the UKUSA Agreement provides that "[t]he agreement governs the

---

[2] The 1955 version of the UKUSA Agreement, which is the most recent publicly available version of the agreement and was declassified by the NSA in 2010, lists the following "products": "collection of traffic," "acquisition of communications documents and equipment," "traffic analysis," "cryptanalysis," "decryption and translation," and "acquisition of information regarding communications organizations, procedures, practices and equipment." U.K.-U.S. Communications Intelligence Agreement (UKUSA Agreement), May 10, 1955, § 4(a), available at https://www.nsa.gov/news-features/declassified-documents/ukusa/assets/files/new_ukusa_agree_10may55.pdf [hereinafter UKUSA Agreement]. PI requests any records describing the standards that must be satisfied for the "exchange" of "products" including, but not limited to, those contained in the preceding list.
[3] Minimization procedures include, but are not limited to, regulations, policies, procedures or rules addressing the acquisition, processing, retention, dissemination, and destruction of information relating to United States persons that is acquired during the course of intelligence activities.

relations" between the United States and the United Kingdom "in communications intelligence."[4] UKUSA Agreement, § 2. It further provides that:

> The parties agree to the exchange of the products of the following operations relating to foreign communications:-
>
> (1) Collection of traffic.
> (2) Acquisition of communications documents and equipment.
> (3) Traffic analysis.
> (4) Cryptanalysis.
> (5) Decryption and translation.
> (6) Acquisition of information regarding communications organizations, procedures, practices and equipment.

*Id*. at § 4(a). The UKUSA Agreement therefore documents the United States government's agreement with the British (as well as Canadian, Australian and New Zealand) governments to exchange intelligence.

The requested records will also "contribute significantly to the public understanding of the operations or activities of the government." 5 U.S.C. § 552(a)(4)(A)(iii). The government's surveillance powers, capabilities, and activities, including as they pertain to foreign intelligence, are matters of great public interest and concern. Very little information on the government's agreement to exchange intelligence with the British, Canadian, Australian, and New Zealand governments, including the legal basis and scope of that power, currently exists in the public domain. A clearer understanding of this agreement and whether it appropriately accommodates the constitutional rights of American citizens and residents whose communications and/or data are implicated in the course of that exchange, matter significantly to the public.

Second, PI does not have a commercial interest in the disclosure of the requested records. PI is a registered charity in the United Kingdom that seeks to advance the right to privacy throughout the world. Dissemination of information about government activities, particularly with respect to surveillance, is a critical and substantial component of PI's mission and work. PI does not seek to commercially benefit from these activities. Any information obtained through this request will be disseminated to the public at no cost for the purpose of educating the public and promoting the protection of civil liberties and human rights.

---

[4] Appendix J to the 1955 version of the UKUSA Agreement further provides that "Canada, Australia and New Zealand will be regarded as UKUSA-collaborating Commonwealth countries." Principles of UKUSA Collaboration with Commonwealth Countries other than the U.K., Appendix J, UKUSA Agreement.

**Request for a Waiver of Search and Review Fees**

In the alternative, PI requests a waiver of search and review fees on the ground that the requested records are not sought for commercial use and because PI is a "representative of the news media." 5 U.S.C. § 552(a)(4)(A)(ii)(II). As discussed above, PI does not seek the requested records for commercial use.

PI further qualifies as a representative of the news media because it "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii); *see also* Nat'l Sec. Archive v. Dep't of Def., 880 F.2d 1381, 1387 (D.C. Cir. 1989). PI conducts research on a variety of issues related to privacy and surveillance. It then publishes its research in a variety of formats, including research reports,[5] policy papers,[6] and frequent blog posts.[7] This information is freely available via PI's website.

For the reasons above, we respectfully request that all fees related to the search, review, and duplication of the requested records be waived. If these fees will not be waived, we ask that you contact us at the email address listed below should the estimated fees resulting from this request exceed $100.

\*\*\*

We request that responsive electronic records be provided electronically in their native file format, if possible. See 5 U.S.C. § 552(a)(3)(B). Alternatively, we request that the records be provided electronically in text-searchable PDF, in the best image quality in the State Department's possession, and in separate, Bates-stamped files.

We further request that you provide an estimated date on which you will finish processing this request. See 5 U.S.C. § 552(a)(7)(B).

If this FOIA request is denied in whole or in part, please provide the reasons for the denial, pursuant to 5 U.S.C. § 552(a)(6)(A)(i). In addition, please release all segregable portions of otherwise exempt material in accordance with 5 U.S.C. § 552(b). Furthermore, if any documents responsive to this request are classified, please identify those documents, including a date and document number where possible, so we may begin the process of

---

[5] *See, e.g.*, Edin Omanovic, Privacy International, *The Global Surveillance Industry*, July 2016, https://privacyinternational.org/sites/default/files/global_surveillance.pdf.

[6] *See, e.g.*, Privacy International, *Submission to the UN Special Rapporteur on the Promotion and Protection of the Right to Freedom of Opinion and Expression: Study on Telecommunications and Internet Access Sector*, Nov. 2016, https://www.privacyinternational.org/sites/default/files/UN%20SR%20FOE%20Study%20on%20ICT%20Sector%20submission.pdf.

[7] *See, e.g.*, Eva Blum-Dumontet, *Friends, Followers, Police Officers, and Enemies: Social Surveillance in Thailand*, Sept. 20, 2016, https://www.privacyinternational.org/node/935.

requesting a Mandatory Declassification Review under the terms of Executive Order 13,526 (2010).

       Thank you for your consideration of this request. If you have any questions or concerns, please do not hesitate to contact us at the email address listed below. Pursuant to 5 U.S.C. § 552(a)(6)(A)(i), we expect a response regarding this request within the twenty working-day statutory time limit.

Sincerely,

Scarlet Kim
Legal Officer
Privacy International

Phone: +44 (0) 20 3422 4321
Email: scarlet@privacyinternational.org



**Address**: 62 Britton Street, London, EC1M 5UY, Great Britain
**Phone**: +44 (0) 20 3422 4321
**Website**: www.privacyinternational.org

March 16, 2017

**VIA E-MAIL**

FOIA Officer
National Archives and Records Administration
8601 Adelphi Road, Room 3110
College Park, MD 20740

**Re: Request Under Freedom of Information Act**

Dear FOIA Officer,

Privacy International ("PI") submits this request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for access to records relating to the British-United States Communication Intelligence Agreement (now known as the "UKUSA Agreement"). Specifically, we request the following records[1]:

1. Any records governing, amending, extending or appended to the UKUSA Agreement.

2. Any records relating to the implementation of the UKUSA Agreement by the United States government, including, but not limited to:

   a. Regulations, policies, memoranda, legal opinions, strategy documents, directives, definitions, and technical manuals or specifications;

   b. Records pertaining to planning, technical and other relevant conferences, including, but not limited to, minutes, reports and recommendations.

3. Any records construing or interpreting the authority of an executive branch agency pursuant to the UKUSA Agreement; any regulations, policies or other implementing documents issued thereunder; or any other relevant authorities pertaining to the UKUSA Agreement.

---

[1] Records include, but are not limited to, letters, reports, memoranda, legal opinions, policy statements, notes, technical manuals, technical specifications, tape recordings, electronic records (including email, data, and computer source and object code), and any other materials.

4. Any records describing the standards that must be satisfied for the "exchange" of "products" of "operations relating to foreign communications," as defined by the executive branch agencies, pursuant to their authority under the UKUSA Agreement; any regulations, policies or other implementing documents issued thereunder; or any other relevant authorities governing the "exchange" of intelligence "products" under the UKUSA Agreement.[2]

5. Any records describing the minimization procedures used by the executive branch agencies with regard to the "exchange" of "products" of "operations relating to foreign communications," as the agencies define these terms, pursuant to their authority under the UKUSA Agreement; any regulations, policies or other implementing documents issued thereunder; or any other relevant authorities governing the "exchange" of intelligence "products" under the UKUSA Agreement.[3]

6. Any other records governing the exchange of intelligence between the United States government and the governments of the United Kingdom, Canada, Australia and/or New Zealand.

**Request for a Public Interest Fee Waiver**

PI requests a waiver of search, review and duplication fees on the ground that disclosure of the requested records is in the public interest because it: (1) "is likely to contribute significantly to public understanding of the operations or activities of the government," and (2) "is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). This request clearly satisfies both criteria.

First, the requested records concern "the operations or activities of the government." The 1955 version of the UKUSA Agreement provides that "[t]he agreement governs the

---

[2] The 1955 version of the UKUSA Agreement, which is the most recent publicly available version of the agreement and was declassified by the NSA in 2010, lists the following "products": "collection of traffic," "acquisition of communications documents and equipment," "traffic analysis," "cryptanalysis," "decryption and translation," and "acquisition of information regarding communications organizations, procedures, practices and equipment." U.K.-U.S. Communications Intelligence Agreement (UKUSA Agreement), May 10, 1955, § 4(a), available at https://www.nsa.gov/news-features/declassified-documents/ukusa/assets/files/new_ukusa_agree_10may55.pdf [hereinafter UKUSA Agreement]. PI requests any records describing the standards that must be satisfied for the "exchange" of "products" including, but not limited to, those contained in the preceding list.
[3] Minimization procedures include, but are not limited to, regulations, policies, procedures or rules addressing the acquisition, processing, retention, dissemination, and destruction of information relating to United States persons that is acquired during the course of intelligence activities.

relations" between the United States and the United Kingdom "in communications
intelligence."[4] UKUSA Agreement, § 2. It further provides that:

> The parties agree to the exchange of the products of the following operations
> relating to foreign communications:-
>
> (1) Collection of traffic.
> (2) Acquisition of communications documents and equipment.
> (3) Traffic analysis.
> (4) Cryptanalysis.
> (5) Decryption and translation.
> (6) Acquisition of information regarding communications organizations,
> procedures, practices and equipment.

*Id*. at § 4(a). The UKUSA Agreement therefore documents the United States government's
agreement with the British (as well as Canadian, Australian and New Zealand) governments
to exchange intelligence.

The requested records will also "contribute significantly to the public understanding
of the operations or activities of the government." 5 U.S.C. § 552(a)(4)(A)(iii). The
government's surveillance powers, capabilities, and activities, including as they pertain to
foreign intelligence, are matters of great public interest and concern. Very little information
on the government's agreement to exchange intelligence with the British, Canadian,
Australian, and New Zealand governments, including the legal basis and scope of that power,
currently exists in the public domain. A clearer understanding of this agreement and whether
it appropriately accommodates the constitutional rights of American citizens and residents
whose communications and/or data are implicated in the course of that exchange, matter
significantly to the public.

Second, PI does not have a commercial interest in the disclosure of the requested
records. PI is a registered charity in the United Kingdom that seeks to advance the right to
privacy throughout the world. Dissemination of information about government activities,
particularly with respect to surveillance, is a critical and substantial component of PI's
mission and work. PI does not seek to commercially benefit from these activities. Any
information obtained through this request will be disseminated to the public at no cost for the
purpose of educating the public and promoting the protection of civil liberties and human
rights.

---

[4] Appendix J to the 1955 version of the UKUSA Agreement further provides that "Canada,
Australia and New Zealand will be regarded as UKUSA-collaborating Commonwealth
countries." Principles of UKUSA Collaboration with Commonwealth Countries other than
the U.K., Appendix J, UKUSA Agreement.

**Request for a Waiver of Search and Review Fees**

In the alternative, PI requests a waiver of search and review fees on the ground that the requested records are not sought for commercial use and because PI is a "representative of the news media." 5 U.S.C. § 552(a)(4)(A)(ii)(II). As discussed above, PI does not seek the requested records for commercial use.

PI further qualifies as a representative of the news media because it "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii); *see also* Nat'l Sec. Archive v. Dep't of Def., 880 F.2d 1381, 1387 (D.C. Cir. 1989). PI conducts research on a variety of issues related to privacy and surveillance. It then publishes its research in a variety of formats, including research reports,[5] policy papers,[6] and frequent blog posts.[7] This information is freely available via PI's website.

For the reasons above, we respectfully request that all fees related to the search, review, and duplication of the requested records be waived. If these fees will not be waived, we ask that you contact us at the email address listed below should the estimated fees resulting from this request exceed $100.

\*\*\*

We request that responsive electronic records be provided electronically in their native file format, if possible. See 5 U.S.C. § 552(a)(3)(B). Alternatively, we request that the records be provided electronically in text-searchable PDF, in the best image quality in the NARA's possession, and in separate, Bates-stamped files.

We further request that you provide an estimated date on which you will finish processing this request. See 5 U.S.C. § 552(a)(7)(B).

If this FOIA request is denied in whole or in part, please provide the reasons for the denial, pursuant to 5 U.S.C. § 552(a)(6)(A)(i). In addition, please release all segregable portions of otherwise exempt material in accordance with 5 U.S.C. § 552(b). Furthermore, if any documents responsive to this request are classified, please identify those documents,

---

[5] *See, e.g.*, Edin Omanovic, Privacy International, *The Global Surveillance Industry*, July 2016, https://privacyinternational.org/sites/default/files/global_surveillance.pdf.

[6] *See, e.g.*, Privacy International, *Submission to the UN Special Rapporteur on the Promotion and Protection of the Right to Freedom of Opinion and Expression: Study on Telecommunications and Internet Access Sector*, Nov. 2016, https://www.privacyinternational.org/sites/default/files/UN%20SR%20FOE%20Study%20on%20ICT%20Sector%20submission.pdf.

[7] *See, e.g.*, Eva Blum-Dumontet, *Friends, Followers, Police Officers, and Enemies: Social Surveillance in Thailand*, Sept. 20, 2016, https://www.privacyinternational.org/node/935.

including a date and document number where possible, so we may begin the process of requesting a Mandatory Declassification Review under the terms of Executive Order 13,526 (2010).

Thank you for your consideration of this request. If you have any questions or concerns, please do not hesitate to contact us at the email address listed below. Pursuant to 5 U.S.C. § 552(a)(6)(A)(i), we expect a response regarding this request within the twenty working-day statutory time limit.

Sincerely,

Scarlet Kim
Legal Officer
Privacy International

Phone: +44 (0) 20 3422 4321
Email: scarlet@privacyinternational.org